The opinion of the Court was delivered by
O’Neall, J.
That tenants for life are trustees for the remainder-men or reversioners, as the case may be, and their possession, or the possession of any one claiming under them, cannot be adverse during the continuance of the particular estate, to rights in remainder or reversion, is too clear to admit of a question. But on the determination of the particular estate, the trust is also determined ; and the holding over of a tenant per autre vie, must be adverse. His possession is no longer referable to the title by which he came in ; if he uses the property, it is tortious against the remainder-man or reversioner: and for it an action will lie against him. It is true, if he chooses, he can hold the property as a mere stakeholder, by either not using it, or by *367 giving notice to the right owner that he is ready to deliver it to him ; and, in such a case, he would not be liable to an action. But if he uses the property at all, it must be as a wrong doer, and the wrong then commenced may, by a sufficient lapse of time, be the foundation of a legal title. Any act of possession which gives thé'legal owner the right to sue,'is generally adverse, and may, after the time limited by the statute, bar the plaintiff’s right of recovery. In Fisher vs. Prosser, Cowp. 217, Lord Mansfield said: “ A man may come in by a rightful possession, and yet hold over adversely without a title. If he does, such holding over, under circumstances, will be equivalent to an actual ouster. For instance, length of possession during a particular estate, as a term of one thousand years; or under a lease for lives, as long as the lives are in being, gives no title. But if tenant -per autre vie hold over for twenty years after the death of cestuy que vie, such holding over will, in ejectment, be a complete bar to the remainder-man or reversioner, because it was adverse to his title.” So in the case before us, the holding over of the husband, after the death of his wife, the tenant for life, is adverse to the title of the complainant. For at any time after the expiration of the year, in which Mrs. Tálbird died, (if she died after the 1st of March,) the complainant might have brought trover for the conversion of the slaves, against the defendant; and his use of them would have been sufficient evidence to establish the conversion. Under our Act of Limitations, actions ■ of trover ór detinue must be brought by the plaintiff, if laboring under no disability, within four years next after the cause of action given or accrued, and not after. For the purposes of this question, this bill must be regarded in the same light as an action of trover or detinue ; and be subjected to the same rules as to the operation of the statute oí limitations.
The question, then, arises, when did the complainant’s right of action accrue 1 At the end of the year in which Mrs. Tal-bird died, the defendant’s right, as tenant per autre vie, ceased. His use of the slaves, after this time, was the use of-the property of another, without his' consent, either actual or - implied. His *368 possession was, therefore, in this respect, adverse to the legal estate; and the statute would then commence to run, unless the defendant’s admissions qualify the legal effect of this his possession, and repel the presumption that it was adverse. And this, I think, they do.
The admissions, proved by Mr. De Treville, distinctly admit the complainant’s right to an undivided part of the negroes in dispute; propose to give the legacies of the defendant and daughter to the amount of $2,000 for his entire interest; and assign, as a reason why the negroes had never been given up, that they had never been demanded.
There is a wide distinction between promises to revive a debt barred by the statute of limitations, and admissions giving character to a possession. In the former, as decided in the case of Young vs. Monpoey, (2 Bail. 278,) there must be an express promise to pay, or an admission of a subsisting debt which the party is either liable or willing to pay. In the latter, any ad-.. mission of the party in possession,' which goes to show that the possession was not intended, in its commencement or continuance, to defeat the other party’s title, will generally prevent the possession from being considered adverse; Harrington vs. Wilkins, 2 McC. 289 ; and Markley vs. Amos, 2 Bail. 603.
The defendant, in his conversation with Mr. DeTreville, admitted the complainant’s right as a co-tenant; and although he afterwards added, I will not give up the slaves, because I have had an exclusive possession for more than four years, yet it is clear, from his admission, that his possession, in both its commencement and continuance, was by him supposed to be in the right of himself and another. If so, it at once negatives the otherwise legal presumption, that it was adverse. His offer to give up his and his daughter’s legacies, amounting to $2,000, for a release of the complainant’s rights, was not a mere peace offering ; it was such a sum as no one would be willing to pay to be rid of the trouble of a law suit. It shows that he regarded the complainant as having still the rights of property. The reason assigned by the defendant, why possession of the slaves had *369 not been delivered to the complainant, “that no demand had been made,” shows that his possession was either by the actual consent of the remainder-man, or that he did not regard himself as holding over against his rights. For these reasons, I think the plea of the statute of limitations was properly overruled: and the decree of Chancellor DeSaussure is, therefore, affirmed.
O’Neall and Earle,- JJ., concurred.

Decree affirmed.